IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JANE A. RESTANI, JUDGE

| | |
|---|---|
| RISEN ENERGY CO., LTD., | ) |
| Plaintiff, | ) |
| and | ) |
| JA SOLAR TECHNOLOGY YANGZHOU CO., LTD., *et al.*, | ) Consol. Court No. 22-00231 |
| Plaintiff-Intervenors, | ) |
| v. | ) |
| UNITED STATES, | ) |
| Defendant. | ) |

**DEFENDANT'S MOTION FOR VOLUNTARY REMAND**

Pursuant to Rule 7(b) of the Rules of the United States Court of International Trade, defendant, the United States, respectfully requests that the Court partially remand this action to the Department of Commerce for the agency to reconsider its calculation of benchmark prices for land and for ocean freight. Commerce's ocean freight calculation was challenged by plaintiff Risen Energy Co., Ltd. (Risen), and Commerce's land benchmark calculation was challenged by consolidated plaintiffs JingAo Solar Co., Ltd., Shanghai JA Solar Technology Co., Ltd., JA Solar Technology Yangzhou Co., Ltd., Hefei JA Solar Technology Co., Ltd., and JA Solar (Xingtai) Co., Ltd. (collectively, JA Solar). Risen Br., ECF No. 27; JA Solar Br., ECF No. 28-29. Although the parties have fully briefed this matter, subsequent developments with respect to Commerce's practice with respect to both of these issues make a voluntary remand appropriate.

Counsel for the Government has conferred regarding this request with counsel for Risen and counsel for JA Solar, both of whom consent to our voluntary remand request. Specifically, Alexandra Salzman on behalf of Risen and Bryan Cenko on behalf of JA Solar consented by email on September 1, 2023.

**STATEMENT OF FACTS**

In December 2012, Commerce published its countervailing duty order concerning solar cells from China. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China*, 77 Fed. Reg. 73,017 (Dep't of Commerce Dec. 7, 2012). In February 2021, Commerce initiated an administrative review of the order for the period from January 1 to December 31, 2019. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 8,166 (Dep't of Commerce Feb. 4, 2021).

In March 2021, Commerce selected Risen and JA Solar as the mandatory respondents for the review. Respondent Selection Memorandum (Mar. 29, 2021) (P.R. 46). In its initial questionnaire, Commerce requested that respondents report information pertaining to land purchases made from December 2001 to the time of reporting. Initial Questionnaire at III-34-35 (Apr. 27, 2021) (P.R. 48). JA Solar reported that several of its cross-owned affiliates either purchased or leased land in 2018 or 2019. *See* JA Solar Calculation Worksheet at 2019 LandSummary (July 1, 2022) (C.R. 564) (listing leases and purchases reported by JA Solar).[1] JA Solar also incorporated by reference its responses to Commerce's 2017 administrative review of this same order, in which JA Solar had reported all of its purchases of land from 2001 to 2017. JA Solar Initial Questionnaire Response Part IV at Vol. X, pg. 47 (P.R. 215; C.R. 345); *see*

---

[1] JA Solar reported its receipt of land leases and purchases in a series of questionnaire responses. For an example of one such response pertaining to a JA Solar company, *see* JA Solar Initial Questionnaire Response Part IV at Vol. X, pg. 46-49 (June 29, 2021) (P.R. 215; C.R. 345).

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from the People's Republic of China*, 85 Fed. Reg. 79,163 (Dep't of Commerce Dec. 9, 2020) (2017 Final Results), at IDM Cmt. 8 (remanded, final disposition pending).

Commerce placed on the record a memorandum containing a 2018 analysis of government provision of land-use rights in China. Land-Use Rights Memorandum (Apr. 28, 2021) (P.R. 104-116). Commerce also placed on the record as benchmark information 2010 land valuation information for Thailand from an "Asian Marketview" reports by CB Richard Ellis (CBRE). Asian Marketview Reports (Apr. 28, 2021) (P.R. 118). Risen likewise submitted benchmark data, including a report entitled "Malaysia: Costs of Doing Business" published by the Malaysian Investment Development Authority (referred to below as the MIDA data). Risen Benchmark Submission at Ex. 9 (Nov. 17, 2021) (P.R. 304).

In January 2022, Commerce published the preliminary results of the review. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 87 Fed. Reg. 748 (Dep't of Commerce Jan. 6, 2022) (Preliminary Results), and accompanying Preliminary Decision Memorandum (PDM). Commerce preliminarily found that it could not use Chinese land prices as a benchmark because of distortion in the Chinese market for land. PDM at 21-22. Commerce also found that it could not rely on world market prices for land. *Id*. Commerce thus selected a benchmark for land under 19 C.F.R. § 351.511(a)(2)(iii) (also called "tier three"), which directs Commerce to select benchmarks in a manner consistent with market principles. Commerce found that the Thai CBRE data was an appropriate benchmark for 2019 land purchases, citing Thailand's similarity to China in national income levels and population density, as well as "producers' perceptions that Thailand is a reasonable alternative to China as a location for Asian production." PDM at 22-23. Citing the same reasons,

Commerce also selected the MIDA data for use as a benchmark. *Id.* Commerce averaged the data from both sources to obtain a single benchmark price for land, which Commerce used to measure the benefit that companies received for their purchases or leases of land for less than adequate remuneration. *Id.* at 23, 62.

Regarding the ocean freight benchmark for the review, the American Alliance for Solar Manufacturing (the Alliance), in November 2021, submitted benchmark information to the record. Alliance Benchmark Submission (Nov. 17, 2021) (P.R. 306; C.R. 444). The Alliance's submission included a list of container shipping rates provided by Descartes, which cover routes from several United States ports to Shanghai, and which cover several different commodities. *Id.* at 5-6 and Ex. NFI-10 (P.R. 306-07; C.R. 444-45). Risen and JA Solar both provided ocean freight pricing data from Xeneta, which contains monthly prices for various ports around the world to Shanghai. JA Solar Benchmark Submission at 4-5, Ex. 4B (Nov. 17, 2021) (P.R. 313; C.R. 448-49); Risen Benchmark Submission at 1, Exs. 4-5 (P.R. 304; C.R. 439, 442-443).

Commerce preliminarily calculated the benchmark for ocean freight, to be used in calculating the benchmark prices for inputs of polysilicon, aluminum extrusions, and solar glass, by simple-averaging the benchmark prices derived from the Descartes and Xeneta data sets. PDM at 28.

In July 2022, Commerce published the final results of its review. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from the People's Republic of China*, 87 Fed. Reg. 40,491 (Dep't of Commerce July 7, 2022) (Final Results), and the accompanying Issues and Decision Memorandum (IDM). Commerce did not alter its determination to rely on a simple average of the Thai CBRE data and the MIDA data to calculate a single benchmark for land. IDM at Cmt. 17. But regarding ocean freight, Commerce changed

course, recognizing that the Xeneta data provided by JA Solar and Risen consisted of significantly more data points than the Descartes data, and that the Xeneta data should thus be given greater weight in Commerce's calculation methodology. IDM at Cmt. 7. Commerce therefore recalculated its ocean freight benchmark by calculating a monthly price for each ocean freight route, before simple-averaging all of the routes to determine a single ocean freight benchmark. *Id.* This litigation ensued.

## ARGUMENT

### I. Legal Standard

Commerce may, without confessing error, ask the Court to remand a matter so that Commerce may reconsider its prior position. *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001). The United States Court of Appeals for the Federal Circuit has outlined various scenarios in which an agency may seek a remand, including (a) to reconsider its decision because of intervening events outside of the agency's control; (b) in the absence of an intervening event, the agency may request a remand, without confessing error, to reconsider its previous position; and (c) because it believes that its original decision was incorrect on the merits and it wishes to change the result. *Id.* at 1028.

A voluntary remand to an agency is generally appropriate if the agency's concern is substantial and legitimate. *Id.* at 1029; *see also Ad Hoc Shrimp Trade Action Committee v. United States*, 882 F. Supp. 2d 1377, 1381 (Ct. Int'l Trade 2013); *SeAH Steel Corp. v. United States*, 704 F. Supp. 2d 1353, 1378 (Ct. Int'l Trade 2010). "{C}oncerns are considered substantial and legitimate when (1) Commerce supports its request with a compelling justification, (2) the need for finality does not outweigh the justification, and (3) the scope of the request is appropriate." *Baroque Timber Industries (Zhongshan) Co., Ltd. v. United States*, 925

F. Supp. 2d 1332, 1339 (Ct. Int'l Trade 2013).  Likewise, clarifying and correcting a potentially inaccurate determination is a compelling justification for voluntary remand.  *Id*.

**II.     The Court Should Grant A Voluntary Remand For Commerce To Reconsider Its Benchmark Calculations For Land And Ocean Freight**

The Court should exercise its discretion to grant our remand request because Commerce's reasons for seeking remand are "substantial and legitimate."  JA Solar contests Commerce's use of an average of the Thai CBRE and MIDA data as the benchmark for land.  JA Solar Br. 18-25.  Concurrent with this litigation, in its second remand redetermination concerning the 2017 review of the same order, Commerce, under similar facts, used a different approach from the one it used in this case.  *See Risen Energy Co., Ltd. v. United States*, Consol. Ct. No. 20-03912, ECF Nos. 115-116, at 7-11 (2017 Second Remand Results) (disposition on remand pending).  Specifically, Commerce found that "the appropriate methodology for calculating land benchmarks is to index land prices to the date of the purchase of the land-use rights rather than to the {period of review}," and therefore calculated a benchmark for each purchase of land-use rights based on the data source that is most contemporaneous to that purchase.  *Id.* at 9-11.  For example, under Commerce's approach, for a purchase of land-use rights made in 2010, Commerce would use the Thai CBRE data because it is most contemporaneous to that year.  *Id.* at 10.  On the other hand, for a purchase of land-use rights made in 2019, Commerce would use the MIDA data.  *Id.*  Only for purchases equidistant in time from each data source would Commerce use a simple average of both datasets.  *Id.*  Under this approach Commerce still indexes the prices derived from each data source, but does so to the year in which a purchase of land-use rights is made.  *Id.*

Commerce explained in the 2017 Second Remand Results that the approach described above is the "appropriate methodology" for calculating land benchmarks, and Commerce has recently used this approach in a separate remand proceeding.  *Id.*; *see also Jiangsu Zhongji*

6

*Lamination Materials Co., Ltd., et al. v. United States*, Ct. No. 21-00133, ECF No. 67-68 (Jiangsu Zhongi Remand Results).  Therefore, we respectfully request that Commerce's land benchmark calculations be remanded for Commerce to reconsider whether the approach used in this case is appropriate in light of the developments in the 2017 Second Remand Results and the Jiangsu Zhongi Remand Results.

Regarding ocean freight, we also request that the Court remand Commerce's determination so that Commerce may reconsider its ocean freight calculations in light of its current practice.  In the most recent administrative review of the countervailing duty order on solar cells from China, Commerce found that "use of the Descartes data for developing a world market price is not appropriate."  *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China* 88 Fed. Reg. 44,108 (Dep't of Commerce Jul. 11, 2023) (2020 Final Results) and accompanying IDM at Cmt. 10.[2]  There are no material distinctions between the Descartes data discussed in that case and the Descartes data on the record of this case, and the concerns raised in the 2020 Final Results are equally applicable to the data on review in this case.  Thus, it is appropriate that Commerce reconsider its ocean freight calculations on remand to determine whether, in light of the 2020 Final Results, it remains appropriate to use Descartes data as part of its ocean freight benchmark.

Therefore, our reasons for requesting remand with respect to Commerce's land and ocean freight benchmark calculations are substantial and legitimate.  With respect to both issues, the need for finality is outweighed by the justification for remand.  Moreover, we have already requested remand on a separate issue regarding Commerce's treatment of China's Export

---

[2] Likewise, Commerce declined to rely on the Descartes data for the ocean freight benchmark in the 2017 Second Remand Results.  *See* Ct. No. 20-03912, ECF Nos. 115-116, at 11-12.

Buyer's Credit Program with respect to JA Solar, such that granting this motion would enable Commerce to address all three issues together on remand. Because doing so would permit Commerce to conform its findings in this review with its current countervailing duty practices, the justification for doing so is compelling. Finally, the scope of our request is limited to the issues raised, and is therefore appropriate.

## CONCLUSION

For these reasons, we respectfully request that the Court partially remand this action to Commerce for it to reconsider its calculation of benchmarks for land and ocean freight.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

| OF COUNSEL: | /s/ Joshua E. Kurland |
|---|---|
| SPENCER NEFF | JOSHUA S. KURLAND |
| Attorney | Senior Trial Counsel |
| Office of the Chief Counsel | Commercial Litigation Branch |
| for Trade Enforcement and Compliance | Civil Division |
| U.S. Department of Commerce | U.S. Department of Justice |
| | P.O. Box 480, Ben Franklin Station |
| | Washington, D.C. 20044 |
| | Telephone: (202) 616-0477 |
| | Email: Joshua.E.Kurland@usdoj.gov |
| September 1, 2023 | *Attorneys for Defendant United States* |