Case 1:22-cv-00231-JAR   Document 53-1   Filed 01/09/24   Page 1 of 12

Barcode:4488289-01 C-570-980 REM - Remand  -  Consol. Ct No. 22-00231 Slip Op. 23-148

C-570-980
Remand
Slip Op. 23-148
POR: 01/01/2019 – 12/31/2019
**Public Version**  ~~Business Proprietary Document~~
E&C/OVII: LW

*Risen Energy Co., Ltd., et al. v. United States,*
658 F. Supp. 3d 1364 (CIT 2023)
Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules,
from the People's Republic of China

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

**I.   SUMMARY**

The U.S. Department of Commerce (Commerce) has prepared these final results of redetermination pursuant to the remand opinion and order of the U.S. Court of International Trade (the Court) in *Risen Energy Co., Ltd., et al. v. United States*, 658 F. Supp. 3d 1364 (CIT 2023) (*Remand Order*). These final results of redetermination concern the 2019 administrative review of crystalline silicon photovoltaic cells, whether or not assembled into modules (solar cells), from the People's Republic of China (China).[1] The mandatory respondents in the underlying proceeding are JA Solar Technology Yangzhou Co., Ltd. (JA Solar) and Risen Energy Co., Ltd. (Risen). The domestic interested party is the American Alliance for Solar Manufacturing (the Alliance).[2] Relevant here, in the *Final Results*, Commerce: (1) found that

---

[1] *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2019*, 87 FR 40491 (July 7, 2022) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM), amended by *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Notice of Amended Final Results Countervailing Duty Administrative Review; 2019*, 87 FR 50069 (August 15, 2022) (*Amended Final Results*), and corrected by *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2019 and Notice of Amended Final Results of Countervailing Duty Review, 2019; Corrections*, 87 FR 55782 (September 12, 2022) (*Corrections*).
[2] The members of the Alliance are: First Solar, Inc.; Hanwha Q CELLS USA, Inc.; and LG Electronics USA Inc. The Alliance is not a participant in the litigation.

Case 1:22-cv-00231-JAR   Document 53-1   Filed 01/09/24   Page 2 of 12

Barcode:4488289-01 C-570-980 REM - Remand    -    Consol. Ct No. 22-00231 Slip Op. 23-148

mandatory respondents, JA Solar and Risen, used the Export Buyer's Credit program (EBCP);[3] (2) determined that Tax Exemptions Under the Article 26(2) of the Enterprise Income Tax Law Program (Article 26(2) Tax Program) is *de jure* specific;[4] (3) relied on an average of the Thai and Malaysian data as a tier three benchmark for the provision of land for less than adequate remuneration (LTAR);[5] and (4) relied on an average of Xeneta and Descartes datasets as a tier-two benchmark for ocean freight for several LTAR subsidy calculations.[6]

On remand, we have removed the EBCP and Article 26(2) Tax program. Additionally, as the tier three benchmark for the provision of land for LTAR, we have used the Malaysian data given they are more contemporaneous to the acquisition years of the land-use rights; in so doing, we have not disturbed the benefit streams calculated in the 2017 administrative review and carried forward to this review (*i.e.*, 2019 administrative review). Finally, with respect to the tier two benchmark for ocean freight, we excluded Descartes data and are relying solely on Xeneta data. Consequently, we have revised the subsidy benefit calculations and the final subsidy rates for JA Solar and Risen, which are, now, 10.04 percent and 7.22 percent, respectively.[7]

## II.   BACKGROUND

In the *Final Results*, Commerce: (1) found that JA Solar and Risen used the EBCP;[8] (2) determined that Article 26(2) Tax program is *de jure* specific;[9] (3) relied on an average of the Thai and Malaysian data as a tier three benchmark for the provision of land for LTAR;[10] and (4)

---

[3] *See Final Results* IDM at Comment 1.
[4] *Id.* at Comment 20.
[5] *Id.* at Comment 17.
[6] *Id.* at Comment 7.
[7] *See* Memorandum, "Calculations for the Draft Results of Redetermination Pursuant to Court Remand," dated December 12, 2023 (Draft Remand Calculation Memorandum).
[8] *See Final Results* IDM at Comment 1.
[9] *Id.* at Comment 20.
[10] *Id.* at Comment 17.

Case 1:22-cv-00231-JAR   Document 53-1   Filed 01/09/24   Page 3 of 12

Barcode:4488289-01 C-570-980 REM - Remand    -    Consol. Ct No. 22-00231 Slip Op. 23-148

relied on an average of Xeneta and Descartes datasets as a tier two benchmark for ocean freight for several inputs for LTAR subsidy calculations.[11]

With respect to EBCP, Commerce relied on adverse facts available (AFA) in finding that both respondents benefited from the EBCP as a result of a failure to cooperate by the Government of China (GOC).[12] Specifically, Commerce determined that both respondents used the program in light of the GOC's failure to provide an adequate explanation of the operation of the program, documentation of the 2013 revisions to the administrative rules regulating the program, and a list of partner/correspondent banks.[13]

With respect to Article 26(2) Tax program, Commerce determined it is *de jure* specific under section 771(5A)(D)(i) of the Tariff Act of 1930, as amended (the Act) because recipients are limited by law to certain enterprises (*i.e.*, enterprises with investment gains derived from direct investment in another resident enterprise, excluding investment gains obtained for holding listed and circulating shares issued by a resident enterprise for less than 12 months consecutively).[14]

With respect to the benchmark for land-use rights, we placed on the record the land values taken from "Asian Marketview" reports by Coldwell Banker Richard Ellis for Thailand 2010 (Thai Data), and Risen submitted industrial land prices for 2014-2019 published by the Malaysian Investment Development Authority (MIDA) in a report titled "Malaysia: Costs of Doing Business" (Malaysian Data).[15] Commerce did not disturb the benefit streams calculated in

---

[11] *Id.* at Comment 7.
[12] *Id.* at Comment 1.
[13] *Id.*
[14] *Id.* at Comment 20.
[15] *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Preliminary Results of Countervailing Duty Administrative Review and Intent To Rescind, in Part; 2019*, 87 FR 748 (January 6, 2023), and accompanying Preliminary Decision Memorandum at 21-23, unchanged in the *Final Results*.

Case 1:22-cv-00231-JAR   Document 53-1   Filed 01/09/24   Page 4 of 12

Barcode:4488289-01 C-570-980 REM - Remand    -    Consol. Ct No. 22-00231 Slip Op. 23-148

the 2017 administrative review and carried forward to this review, and calculated benchmarks for the land-use rights acquired in 2018 and 2019 by: (1) inflating the Thai Data to 2018-2019; (2) utilizing the Malaysian Data for years 2018 and 2019; and then (3) averaging the indexed Thai Data and the Malaysian Data to derive benchmarks for 2018 and 2019.[16] For example, for the land-use right acquired in 2019, the benchmark is the average of Thai Data inflated to 2019 and the Malaysian Data for 2019.[17]

With respect to the ocean freight benchmark, Commerce averaged the monthly rates for all routes reported by Xeneta and Descartes.[18]

On August 15 and September 12, 2022, Commerce issued the *Amended Final Results*,[19] and *Corrections*,[20] respectively, for correcting certain ministerial errors and inadvertent errors in the *Final Results*. JA Solar and Risen subsequently challenged these decisions with the Court; on October 11, 2023, the Court remanded for Commerce to reconsider.[21]

On remand, Commerce requested that Risen place on the record the non-use certification which it found to be untimely in the underlying review.[22] Risen complied with Commerce's request.[23] On December 12, 2023, Commerce issued its Draft Remand Results;[24] only JA Solar submitted comments.[25]

---

[16] *See Final Results* IDM at Comment 17 and 18.
[17] *See* Memoranda, "JA Solar's Amended Final Calculations," dated August 8, 2022 (JA Calculation Memorandum); and "Risen's Amended Final Calculations," dated August 8, 2022 (Risen Calculation Memorandum).
[18] *See Final Results* IDM at Comment 7.
[19] *See Amended Final Results*, 87 FR at 50069.
[20] *See Corrections*, 87 FR at 55782.
[21] *See Remand Order*, 658 F. Supp. 3d at 1371-79.
[22] *See* Commerce's Letter, "Supplemental Questionnaire," dated November 27, 2023.
[23] *See* Risen's Letter, "Supplemental Questionnaire Response," dated November 29, 2023.
[24] *See* Draft Results of Remand Redetermination Pursuant to Court Remand, *Risen Energy Co., Ltd., et al. v. United States*, Consol. Court No. 22-00231, Slip Op. 23-148 (CIT October 11, 2023), dated December 12, 2023 (Draft Remand Results).
[25] *See* JA Solar's Letter, "Comments on Draft Remand Redetermination," dated December 21, 2023 (JA Solar Comments).

Case 1:22-cv-00231-JAR   Document 53-1   Filed 01/09/24   Page 5 of 12

Barcode:4488289-01 C-570-980 REM - Remand    -    Consol. Ct No. 22-00231 Slip Op. 23-148

### III. FINAL ANALYSIS

The Court's specific instructions, and our further analysis pursuant to them, are discussed below.

1. <u>Export Buyer's Credit Program</u>

The Court granted Commerce's request for remand to apply its new procedure to both respondents.[26] The Court remanded Commerce to consider Risen's untimely non-use certification, and to attempt to verify the certifications to the extent that verification does not overly burden voluntary participants.[27] Consistent with the *Remand Order*,[28] Commerce requested that Risen place on the record the non-use certification, which were found to be untimely in the underlying review.[29] Risen complied with Commerce's request.[30] The record now contains non-use certifications for each of Risen's U.S. customers to which it sold during the period of review.[31]

Typically, Commerce's practice with respect to this program is to request further information in support of respondents' non-use claims, and then to verify that information.[32] Verification is intended to be a completeness test.[33] To the extent that Commerce verifies less than 100 percent of the information upon which it relies to make a determination, it does so in the manner of a "spot-check."[34] A spot check is intended to confirm the accuracy of a respondent's reported information as a whole, and by its nature is only effective if a respondent makes all of its reported information available for verification. Commerce cannot verify via a

---

[26] *See Remand Order*, 658 F. Supp. 3d at 1370.
[27] *Id.*, 658 F. Supp. 3d at 1372.
[28] *Id.*, 658 F. Supp. 3d at 1371.
[29] *See* Commerce's Letter, "Supplemental Questionnaire," dated November 27, 2023.
[30] *See* Risen's Letter, "Supplemental Questionnaire Response," dated November 29, 2023.
[31] *See* Risen's Letter, "Section III Questionnaire Response," dated June 21, 2021, at 40-41 and Exhibits 19 and 20.
[32] *See Cooper (Kunshan) Tire Co. v. United States*, 610 F. Supp. 3d 1287 (CIT 2022).
[33] *Id.*
[34] *Id.*

Case 1:22-cv-00231-JAR   Document 53-1   Filed 01/09/24   Page 6 of 12

Barcode:4488289-01 C-570-980 REM - Remand    -    Consol. Ct No. 22-00231 Slip Op. 23-148

"spot-check" information which is not made available for verification and, therefore, must assume that information which is not provided is unverifiable.

Here, the Court held that "Commerce may choose to attempt to verify" the non-use certifications to the extent that verification does not overly burden voluntary participants.[35] The Court's requirement that verification not overly burden participants limits Commerce's ability to verify such that Commerce may be unable to verify non-use of the EBCP fully and effectively without violating the Court's order. Because it cannot effectively verify the information that would be provided in response to a supplemental EBCP questionnaire, Commerce finds here that issuing such a questionnaire may not meaningfully resolve the question of whether Risen's and JA Solar's customers received export buyer's credits. Therefore, Commerce is, under protest,[36] finding that Risen and JA Solar did not use the program based on the information already on the record.

2. Article 26(2) Tax Program

The Court remanded Commerce to remove the Article 26(2) Tax Program from its subsidy rate for Risen.[37] In the underlying review, we found the program to be *de jure* specific as it was limited to "enterprises with investment gains derived from direct investment in another resident enterprise."[38] The Court found that Commerce had not identified an adequately specific enterprise or industry that the program is limited to under section 771(5A)(D)(i) of the Act.[39] Further, the Court stated that the program is open to all enterprises and industries who have

---

[35] *See Remand Order*, 658 F. Supp. 3d at 1371-72.
[36] *See Viraj Group Ltd. v. United States*, 343 F.3d 1371 (Fed. Cir. 2003) (*Viraj*).
[37] *See Remand Order*, 658 F. Supp. 3d at 1373.
[38] *See Final Results* IDM at Comment 20.
[39] *See Remand Order*, 658 F. Supp. 3d at 1373.

Case 1:22-cv-00231-JAR   Document 53-1   Filed 01/09/24   Page 7 of 12

Barcode:4488289-01 C-570-980 REM - Remand    -    Consol. Ct No. 22-00231 Slip Op. 23-148

investment gains derived from investing in other resident enterprises, and, thus, our *de jure* specificity finding for the program was not supported by substantial evidence.[40]

Commerce respectfully disagrees with the Court's holding, because we maintain that the Article 26(2) Tax program favors a specific subset of enterprises over others as set forth in law by the *Enterprise Income Tax Law of the People's Republic of China*, *i.e.*, "resident" enterprises with investment gains derived from direct investment in another "resident" enterprise excluding "investment gains obtained for holding listed and circulating shares issued by a resident enterprise for less than 12 months consecutively."[41] Nevertheless, under respectful protest, and as directed by the Court, we are complying with its *Remand Order* and we will remove this program as a countervailable subsidy.[42]

   3. Land Value Benchmark

The Court remanded Commerce's benefit calculations for the provision of land for LTAR. Specifically, the Court ordered Commerce to consider its holdings in *Risen II*, in which the Court found that the use of the Thai Data is insufficiently explained to meet the substantial evidence standard.[43]

On remand, consistent with *Risen II*, Commerce explained that when allocating non-recurring subsidies, contemporaneity is identified in Commerce's regulations with reference to the year in which the subsidy is approved (*e.g.*, when identifying a discount rate for purposes of

---

[40] *Id*.
[41] *See* GOC's Letter, "GOC Initial Questionnaire Response," dated June 21, 2021, at Exhibit B-2 ("Enterprise Income Tax Law" at Article 26); *see also* GOC's Letter, "GOC's Post Preliminary Results Questionnaire Response," dated February 14, 2022, at Exhibit NSA-25 "Article 83."
[42] *See Viraj*, 343 F.3d at 1375.
[43] *See Remand Order*, 658 F. Supp. 3d at 1375 (citing *Risen Energy Co. v. United States*, Consol. Court No. 20-03912, Slip Op. 23-48 (CIT April 11, 2023) (*Risen II*)).

Case 1:22-cv-00231-JAR   Document 53-1   Filed 01/09/24   Page 8 of 12

Barcode:4488289-01 C-570-980 REM - Remand    -    Consol. Ct No. 22-00231 Slip Op. 23-148

allocating a non-recurring subsidy).[44]  In particular, pursuant to 19 CFR 351.524(d)(3), Commerce will "select a discount rate based on the data for the year in which the government agreed to provide the subsidy."  Additionally, in identifying a land for LTAR benchmark, Commerce's practice is to look to the year in which the land-use rights were acquired from the government, and the terms of the acquisition (reflecting land values and prices for the year) were set, to determine the appropriate time period for calculating the land benchmark.[45]  The Court has acknowledged this practice.[46]  Thus, for purposes of identifying a land value for LTAR benchmark in China, under Commerce's regulations and practice, we must determine when the producer/exporter acquired the land-use rights from the GOC and seek benchmark information that is contemporaneous with the year(s) of acquisition.  In other words, the appropriate methodology for calculating land benchmark is to index a land price to the date of the purchase of the land-use right (*e.g.*, 2018) rather than to the period of review (*e.g.*, 2019).

The land-use rights in question were purchased by JA Solar and/or Risen in 2018 and 2019 because both companies were not selected for individual examination in 2018 administrative review.[47]  For those transactions in these final results of redetermination, we are

---

[44] *See Final Results of Redetermination Pursuant to Court Remand*, *Risen Energy Co., Ltd. et al. v. United States*, Consol. Court No. 20-03912; Slip Op. 23-48 (CIT 2023), dated July 11, 2023, available at https://access.trade.gov/Resources/remands/23-48.pdf.

[45] *See, e.g.*, *Laminated Woven Sacks from the People's Republic of China:  Final Affirmative Countervailing Duty Determination and Final Affirmative Determination, in Part, of Critical Circumstances*, 73 FR 35639 (June 24, 2008), and accompanying IDM at 17 ("In order to calculate the benefit, we first multiplied the benchmark land rate (deflated from 2007 to the year the transaction was officially approved by the country) …");  *see also Aluminum Extrusions from the People's Republic of China:  Final Affirmative Countervailing Duty Determination*, 76 FR 18521 (April 4, 2011) ("New Zhongya acquired its land-use rights in 2006, and the Guang Ya Companies acquired their land-use rights in 2007.  As 2007 is more contemporaneous with the time of these purchases, we have used 2007 prices for Thai land industrial land for benchmarking purposes.").

[46] *See Zhaoqing New Zhongya Aluminum Co. v. United States*, 961 F. Supp. 2d 1346, 1354 (CIT 2014) (upholding Commerce's selection of the land benchmark as reasonable and stating "{Commerce's} defense of its decision not to discount for inflation rests on the relatively short time separating New Zhongya's *acquisition of land use rights in* June and October 2006 and the second quarter of 2007 from which the indicative values in the CBRE Report were drawn.").

[47] *See* JA Calculation Memorandum; *see also* Risen Calculation Memorandum.

Case 1:22-cv-00231-JAR   Document 53-1   Filed 01/09/24   Page 9 of 12

Barcode:4488289-01 C-570-980 REM - Remand   -   Consol. Ct No. 22-00231 Slip Op. 23-148

relying solely on Malaysian Data, as these prices are more contemporaneous to these acquisition years than the Thai Data.[48]  Pursuant to the Court's *Remand Order*, Commerce is not reevaluating the benefits for the land-use rights acquisitions that were determined in 2017 administrative review.[49]  Further, we continue to treat the land-use right that was paid via a lump-sum for a duration of more than one year as a non-recurring subsidy, and land-use right that was paid periodically for a duration of one year or less as a recurring subsidy.

4. Ocean Freight Benchmark

The Court granted Commerce's request for remand to reconsider whether it remains appropriate to use the Descartes data for purposes of this segment of the proceeding.[50]  The Descartes data consist of freight rates from [    ] American cities (*i.e.*, [    ], [    ], [    ], and [    ]) to one Chinese city (*i.e.*, [    ]).[51]  All estimates of freight charges are based on the same "Tariff Code" and weight that is less than a container load (*i.e.*, [    ] KG). Further, 90 percent of additional fees are for emergency events (*i.e.*, [         ], [     ], [        ]).  Because the small container load and emergency fees do not reflect what an importer actually paid or would pay if it imported the relevant inputs, we find that use of the Descartes data for developing a tier two benchmark is not appropriate.  On remand, Commerce concludes that it is reasonable to rely solely on Xeneta data.[52]  Thus, Commerce has made changes to all LTAR programs that incorporate ocean freight (solar grade polysilicon, aluminum extrusions, solar glass, and ocean shipping).

---

[48] *See* Draft Remand Calculation Memorandum.
[49] *Id.*; *see also Remand Order*, 658 F. Supp. 3d at 1375-77.
[50] *See Remand Order*, 658 F. Supp. 3d at 1378.
[51] *See* Alliance's Letter, "Submission of Benchmark Information and Other Factual Information," dated November 17, 2021, at Exhibit NFI-10.
[52] *See* Draft Remand Calculation Memorandum.

Case 1:22-cv-00231-JAR   Document 53-1   Filed 01/09/24   Page 10 of 12

Barcode:4488289-01 C-570-980 REM - Remand    - Consol. Ct No. 22-00231 Slip Op. 23-148

IV.  **INTERESTED PARTY COMMENTS**

Commerce received comments on its Draft Remand Results from JA Solar.  JA Solar acknowledges that Commerce has fully complied with the *Remand Order*, but disagrees with the rationale underlying Commerce's removal of the EBCP AFA rate.[53]

**Issue:  Reasoning for Removal of the EBCP AFA Rate**

*JA Solar's Comments*

- Commerce failed to acknowledge the onerous nature of a complete verification for unaffiliated U.S. customers and failed to acknowledge that this is true especially when no evidence indicates any usage of this program by the respondents or by any U.S. customer. Contrary to any evidence suggesting usage of the EBCP, Commerce has successfully verified JA Solar's same importer-customer in the 2017 administrative review and concluded non-use of this program.[54]

- JA Solar opposes Commerce's lack of analysis and acknowledgement of the onerous nature of an EBCP verification.  Commerce should have concluded that no onerous verification is necessary here and that the record as a whole supports the removal of the AFA rate without verification, or Commerce could have conducted a verification in a manner that did not overly burden respondents.  Commerce ignored this alternative and read a false dichotomy into the Court's order – either verify in a manner that is onerous or eliminate the AFA rate without verification.[55]

---

[53] *See generally* JA Solar Comments.
[54] *Id.* at 3 (citing *Final Results of Redetermination Pursuant to Court Remand, Risen Energy Co., Ltd., et al. v. United States*, Consol. Court No. 20-03912, Slip Op. 22-44 (CIT May 12, 2022), dated October 6, 2022, available at https://access.trade.gov/resources/remands/22-44.pdf).
[55] *Id.* at 3-4.

Case 1:22-cv-00231-JAR   Document 53-1   Filed 01/09/24   Page 11 of 12

Barcode:4488289-01 C-570-980 REM - Remand    -    Consol. Ct No. 22-00231 Slip Op. 23-148

**Commerce's Position:**

JA Solar opposes the rationale underlying Commerce's decision to remove the EBCP AFA rate, and insists it be revised. This disagreement, however, fails to undermine Commerce's decision, which, as JA Solar concedes,[56] complies with the *Remand Order*. Indeed, the results of redetermination pursuant to Court remand are reviewed for compliance with the Court's order.[57] Moreover, unless specifically directed by the Court, Commerce has broad discretion to fully consider the issues remanded.[58]

Here, the Court held that Commerce may *choose* to attempt to verify the non-use certifications to the extent that verification does not overly burden voluntary participants.[59] The Court's requirement that verification not overly burden participants limits Commerce's ability to verify such that Commerce may be unable to verify non-use of the EBCP fully and effectively without violating the Court's order. Because it cannot effectively verify the information that would be provided in response to a supplemental EBCP questionnaire, Commerce finds here that issuing such a questionnaire may not meaningfully resolve the question of whether Risen's and JA Solar's customers received export buyer's credits. Therefore, Commerce is, under protest,[60] finding that Risen and JA Solar did not use the program based on the information already on the record.

**V.   FINAL RESULTS OF REDETERMINATION**

As discussed above, we have reconsidered our findings in the seven programs at issue: the EBCP, the Article 26(2) Tax program, the land for LTAR, and four LTAR programs that

---

[56] *Id.* at 3 ("Commerce complied with the {*Remand Order*} by removing the AFA rate under EBCP").
[57] *See Both-Well (Taizhou) Steel Fittings Co., v. United States*, 589 F. Supp. 3d 1343, 1345 (CIT 2022); *see also Xinjiamei Furniture (Zhangzhou) Co. v. United States*, 958 F. Supp. 2d 1255, 1259 (CIT 2014).
[58] *See ABB, Inc. v. United States*, 273 F. Supp. 3d 1186, 1199 (CIT 2017), *aff'd* 920 F.3d 811 (Fed. Cir. 2019).
[59] *See Remand Order*, 658 F. Supp. 3d at 1371-72.
[60] *See Viraj*.

Case 1:22-cv-00231-JAR    Document 53-1    Filed 01/09/24    Page 12 of 12

Barcode:4488289-01 C-570-980 REM - Remand    -    Consol. Ct No. 22-00231 Slip Op. 23-148

incorporate ocean freight (solar grade polysilicon, aluminum extrusions, solar glass, and ocean shipping). Should the Court sustain these final results of redetermination, we intend to issue a *Timken* notice[61] with an amended final results providing the updated subsidy rates in the third column of the below chart, consistent with the discussion above, and issue appropriate customs instructions to U.S. Customs and Border Protection.

| Company / Program | Amended Final Results Subsidy Rate (percent) | Pursuant to Redetermination Subsidy Rate (percent) |
|---|---|---|
| **JA Solar** | | |
| EBCP | 5.46 | 0 |
| Article 26(2) | 2.55 | 0 |
| Land for LTAR | 1.25 | 1.20 |
| Solar Grade Polysilicon for LTAR | 0.39 | 0.38 |
| Aluminum Extrusions for LTAR | 0 | 0 |
| Solar Glass for LTAR | 4.47 | 4.03 |
| Ocean Shipping for LTAR | 0 | 0 |
| Other Subsidy Programs | 4.43 | 4.43 |
| Total CVD Rate | 18.55 | 10.04 |
| **Risen** | | |
| EBCP | 5.46 | 0 |
| Article 26(2) | 0.03 | 0 |
| Land for LTAR | 0.97 | 0.87 |
| Solar Grade Polysilicon for LTAR | Not Used | Not Used |
| Aluminum Extrusions for LTAR | 0 | 0 |
| Solar Glass for LTAR | 3.83 | 3.45 |
| Other Subsidy Programs | 2.89 | 2.89 |
| Total CVD Rate | 13.18 | 7.22 |

1/9/2024

X *(signature)*

Signed by: ABDELALI ELOUARADIA
Abdelali Elouaradia
Deputy Assistant Secretary
  for Enforcement and Compliance

---

[61] *See Timken Co. v. United States*, 893 F.2d 337 (Fed. Cir. 1990) (*Timken*).